IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY,<br>    Plaintiff | :<br>:<br>:<br>: |
| v. | :   Civil Action No. 07-3003 |
| AUDREY JAFFE,<br>    Defendant. | :<br>:<br>: |

**MEMORANDUM OPINION AND ORDER**

Rufe, J.                                                                              August 21, 2008

This action by Allstate Property & Casualty Insurance Company ("Allstate" or "Plaintiff") seeks declaratory judgment that Defendant Audrey Jaffe is not entitled to underinsured motorist benefits under Plaintiff's insurance policy. Before the Court is Plaintiff's Motion for Summary Judgment and Defendant's Response in Opposition.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In evaluating this Summary Judgment Motion, the Court draws all inferences in the light most favorable to the non-moving party.[1] Defendant is the mother of 46-year-old Sydney Jaffe ("Sydney"), who was killed by a car while riding her bike in Arizona on September 30, 2004.[2] At the time of the accident, and for four years prior, Sydney lived at 2100 South Ave, Apt. D4, in Yuma, Arizona.[3] Sydney was employed by Southwest Emergency Physicians as a neurologist,

---

[1] Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004).

[2] Def.'s Resp. Ex. A.

[3] Pl.'s Mot. Exs. B, E.

where she worked from March, 2000 through her death in 2004.[4]

The deposition testimony of Defendant establishes that Sydney resided with her mother in Pennsylvania until she entered Princeton University at around age 18.[5] Sydney attended Princeton as an undergraduate, residing at the University, in Princeton, New Jersey, not far from her mother's residence in Elkins Park, Pennsylvania. Although Sydney lived at the University, she made frequent visits home to see her mother and younger sister, Deborah, and lived at home during the summers.[6] After college, Sydney attended medical school at Texas A&M University. She then had a series of medical residencies and professional positions across the country, and moved from Texas to Roanoke, Virginia, to Winston-Salem, North Carlolina, then to West Virginia, back to North Carolina, to Kentucky and finally to Arizona four years prior to the time of her death.[7] At no point after leaving for college did Sydney Jaffe resume residence with her mother, other than to occasionally leave or retrieve clothes or books or during undergraduate summers.[8]

Once in Arizona, in 2000, Sydney worked for her employer the entire four years she lived there, residing in the same apartment.[9] Defendant categorizes Sydney's job as "locum tenens," or temporary, although she presents no evidence other than her testimony that she believed this to

---

[4] Id.

[5] Id. at 9, 31 (stating that in 2004, Sydney came back to the east coast for her 25-year college reunion).

[6] Id.

[7] Id. at 9-13.

[8] Id. at 11.

[9] Pl.'s Mot. Exs. B-E.

be the case.[10]  Sydney filed Arizona state and federal income tax returns stating her address in Arizona for the years 2001-2002 and 2002-2003, noting a full-time salary of over $140,000 each year.[11]  After her death, Defendant filed Sydney's tax returns, but listed her own home in Pennsylvania as Sydney's residence for the years 2003-2004 and 2004-2005, listing $146,174 in income in 2003 and $137,050 in 2004.[12]

Defendant's automobile insurance policy named her daughter Deborah as the only covered driver other than herself.[13]  Defendant stated that Sydney maintained all of her financial information in Pennsylvania, and that she and Sydney shared joint bank accounts.[14]  In support of this statement, Defendant produced bank records from Bank of America, Wachovia and NCO Financial Systems, Inc., Firstrust, and BB&T Bankcard Corporation addressed to Sydney Jaffe at her mother's address in Pennsylvania.[15]  These statements all bear dates subsequent to Sydney's death, by at least two months, starting December 15, 2004.  In addition, Defendant produced a statement from AT&T from December 17, 2004 showing a $2.79 credit to Sydney's account.[16]

Defendant states that she maintained a room for Sydney in her home in Pennsylvania, though Sydney did not pay her mother rent, and that Sydney intended to find a job on the east

---

[10] Def.'s Dep. at 13.

[11] Pl.'s Mot. Exs. B- C.

[12] Id. at Exs. D-E.

[13] Def.'s Resp. Ex. B.

[14] Def.'s Dep. at 45.

[15] Def.'s Resp. Ex. E.

[16] Id. at Ex. D.

coast and move back home.[17] Defendant testified that Sydney suffered from her father's abandonment at the age of ten and never married out of a mistrust of men.[18] Her mother felt that Sydney depended on her emotionally, and that she, along with Sydney's sister, was "the only person in her life."[19] Defendant saw her daughter frequently, either in Pennsylvania, Arizona, or in Chicago where Defendant's elderly mother lived.[20]

After Sydney's death, Defendant sought to recover underinsured motorist benefits from her own automobile insurance company, Plaintiff Allstate. Allstate's coverage includes both persons insured and their "resident relatives."[21] Defendant maintains that Sydney Jaffe was a resident relative of hers at the time of her death. Plaintiff seeks a declaratory judgment that Sydney was not a resident relative, and therefore that her mother cannot recover underinsured motorist benefits from Allstate.

## II. DISCUSSION

### A. Legal Standard

Our jurisdiction over this matter is based on diversity of citizenship between the parties, as the amount in controversy exceeds $75,000, Plaintiff is an Illinois company and Defendant resides in Pennsylvania. Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

---

[17] Def.'s Dep. at 42-43.

[18] Id. at 15.

[19] Id. at 15-16.

[20] Id. at 44.

[21] Pl.'s Mot. Ex. A.

material fact and that the movant is entitled to judgment as a matter of law."[22]  An issue is "genuine" if there is "sufficient evidence on which a reasonable jury could find for the non-moving party."[23]

Allstate's policy provides compensation "to an insured person for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured auto."[24]  The policy defines an "insured person" as "you and any resident relative."[25]  The policy further defines "resident relative" as "a person who physically resides in your household with the intention of continuing residence there.  Your unmarried dependent children temporarily living away from home will be considered residents if they intend to resume residing in your household."[26]

Interpretation of the term "resident relative" is a legal one, and must be determined based on Pennsylvania contract law.[27]  Pennsylvania courts have determined that the most important factor in establishing residency is physical presence in the household.[28]  In addition, whether someone intended to reside at home is irrelevant, as residence is defined in terms of physical

---

[22] Fed. R. Civ. P. 56(c).

[23] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[24] Pl.'s Mot. Ex. A.

[25] Id.

[26] Id.

[27] See Nationwide Mut. Ins. Co. v. Budd-Baldwin, 947 F.2d 1098, 1101-02 (3d Cir. 1991) (finding that determining whether someone is a "resident relative" in an insurance contract must be determined by examining multiple circumstantial factors).

[28] See, e.g., Erie Ins. Exchange v. Weryha, 931 A.2d 739 (Pa. Super. 2007).

facts.[29]

Pennsylvania law also defines the term "dependence" typically in three contexts: (1) children dependent on the state;(2) the mentally or physically impaired; and (3) individuals temporarily away from home who qualify for their parents' tax exemptions.  In the first context, a dependent must be a child under the age of 18, and "without proper parental care or control, subsistence, education, as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals."[30]  In the second context, a dependent is "any adult who, due to physical or cognitive disability or impairment, requires assistance to meet his needs for food, shelter, clothing, personal care or health care."[31]

In the third context, to qualify as a dependent for purposes of a tax exemption, an individual must meet a four part test, where he or she: (1) bears a relationship to the taxpayer as set forth in the tax code; (2) has the same principal place of abode as the taxpayer for more than one-half of that tax year; (3) who has not reached a requisite age;[32] (4) who has not provided over one-half of his or her own support for the taxable year.[33]  The second part of this test allows for dependents to be temporarily living at home due to special circumstances, namely "illness, education, business, vacation, or military service."[34]  In no context is dependency of an adult defined by an insurance contract as based on emotional support.

---

[29] Amica Mut. Ins. Co. V. Donegal Mut. Ins. Co., 545 A.2d 343 (1988).

[30] See 42 Pa.C.S.A. § 6302 (also noting that a dependent child could be one who has been placed for adoption, abandoned by his or her parents, one who is without parents, habitually truant from school, has been adjudicated delinquent, or who's parents rights have been involuntarily terminated).

[31] 18 Pa.C.S.A. § 2713.

[32] 26 U.S.C. § 152(c)(1)(D) (either 19-years-old or a full time student under 24-years old).

[33] Id. at § 152(c).

[34] 26 C.F.R. § 1.152-1(b).

**B. "Resident Relative"**

Plaintiff argues that summary judgment is appropriate because no reasonable juror could find Sydney Jaffe to be a "resident relative" of Defendant under Allstate's insurance policy. Defendant argues that "resident relative" is defined in ambiguous terms, specifically the term "dependent." She argues that "dependent" does not necessarily mean "financially dependent," but can also mean "emotionally dependent." The issue before the Court is the interpretation of the word "dependent:" (1) whether this term is ambiguous; and (2) whether there is a genuine issue of material fact that Sydney Jaffe was dependent upon her mother at the time of her death.

Typically, when a term in an insurance contract is ambiguous, it is strictly construed against the insurer.[35] However, the language of an insurance policy should not be "tortured . . . to create ambiguities where none exist."[36] Both the Third Circuit and the Middle District of Pennsylvania have found that the term "resident" is unambiguous, meaning someone who is stationed in one place, and not someone who has "occasional, sporadic, and temporary contacts."[37] Likewise, we find the term "resident relative" unambiguous. However, Plaintiff further defined "resident relative" in its policy, making the term even more clear to those it insures, by stating that a "resident relative" can be a dependent child temporarily living away from home with the intent of returning.[38]

Defendant now attempts to argue that, although courts in this circuit have found the term "resident relative" to be unambiguous, the term "dependent" in its definition should be found to

---

[35] St. Paul Fire and Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 (3d Cir. 1991).

[36] Id. at 1431 (quoting Pac. Indem. Co. v. Linn, 766 F.2d 754, 761 (3d Cir. 1985)).

[37] St. Paul Fire, 935 F.2d at 1431-32; Allstate Ins. Co., 782 F. Supp at 1007.

[38] Pl.'s Mot. Ex. A.

be ambiguous. We do not agree with this circular argument. When viewed in the context of the insurance contract, dependence has only one clear interpretation, and that is one based on financial and logistical factors.

While not precedential to this Court, the Middle District of Pennsylvania has faced the same issue, in Allstate Insurance Company v. Sprout.[39] In Sprout, the Court examined a number of factors to determine whether an unmarried son, Potter, was an "unmarried dependent child" of his parents for purposes of this exact clause of Allstate's insurance coverage.[40] Potter was not living with his parents at the time of the occurrence. He kept a few "odds and ends" at his parents' house, stayed there for a night or two before the accident, was independently employed, paid rent on properties other than his parents' house and ate his meals elsewhere.[41] The Court determined, based on these primarily financial and logistical factors, that Potter was not dependent upon his parents.[42]

This Court similarly views dependence in financial and logistical terms. While Defendant argues that dependence could mean "emotional dependence," rather than "financial dependence," we disagree.[43] In the insurance context within which we decide this matter, dependence is primarily a financial term, notably determined, for example, by the place of residence and the presence or absence of financial support.[44] As in Sprout, we find that

---

[39] Allstate Ins. Co. v. Sprout, 782 F. Supp 999, 1007 (M.D. Pa. 1991) (finding that a "resident relative" must be one who lives in the same household as the insured, and who is not just visiting).

[40] Id.

[41] Id.

[42] Id.

[43] Def.'s Resp. at 7 (arguing that "support from another" is synonymous with "comfort of another" in defining dependency).

[44] Sprout, 782 F. Supp at 1007.

dependence must be viewed in a primarily financial light for insurance purposes.[45]

Defendant argues that there is a genuine issue of material fact as to whether or not Sydney was dependent on her.[46] Her argument is twofold: (1) if dependency is defined as emotional dependency, Sydney was dependent on her for emotional support; and (2) even if dependency were defined in financial terms, Sydney and her mother shared bank accounts and were dependent upon one another.[47] As we have stated, the Court does not define dependency for insurance purposes in terms of emotional support. Being an unmarried, 46-year-old woman who was abandoned by her father at a young age does not create "dependency" for insurance purposes.

Defining dependency in financial and logistic terms, we do not find that there is a genuine issue of material fact as to whether Sydney was dependent on her mother. Aside from Defendant's own statements, she presented no evidence that she shared bank accounts with Sydney Jaffe while she was alive. The bank statements that were provided were sent to the address of Audrey Jaffe only after Sydney's death. Shared bank accounts, in any event, are not, without more, evidence of Sydney's intent to resume residence with her mother. The relevant time period for dependency is during Sydney's life, and Plaintiff has provided ample evidence of her financial independence at that time. Sydney Jaffe was a full time medical doctor in Arizona for four years. She had an apartment, however sparsely decorated,[48] that she paid for with her ample salary. She had her own car in Arizona, with her own Arizona insurance policy. She had

---

[45] Id.

[46] Def.'s Resp. at 9.

[47] Id. at 7-8.

[48] See Def.'s Resp. at 10 (arguing that Sydney never resided in Arizona because her apartment was only furnished with a microwave, refrigerator, a bed, a television and a treadmill).

not lived at home for more than a week or two at a time in over twenty-nine years. Her most recent tax returns while she was alive were filed with her Arizona address, with the exception of the last two, which were filed by Defendant after Sydney's death.

This strong evidence, uncontroverted by any contemporaneous evidence other than posthumous bank statements, leads the Court to find that there is no genuine issue of material fact regarding dependency. Even if Sydney Jaffe remained unmarried, intending to return to the east coast to reside with her mother, she was not a resident relative.

## CONCLUSION

The Court finds that Sydney Jaffe was not dependent upon her mother for necessary financial or logistical reasons as required under Allstate's auto insurance policy. Plaintiff Allstate's Motion for Summary Judgment is granted.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY,                    :
    **Plaintiff**                              :

|  | : |  |
| --- | --- | --- |
| **v.** | : | **Civil Action No. 07-3003** |
|  | : |  |
| **AUDREY JAFFE,** | : |  |
| Defendant. | : |  |

## ORDER

**AND NOW**, this 21st day of August, 2008, upon consideration of Plaintiff's Motion for Summary Judgment [Doc. No. 12], and Defendant's Response in Opposition [Docs. No. 13-19], it is hereby,

**ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED**. Defendant Audrey Jaffe shall not be entitled to underinsured motorist benefits for Sydney Jaffe under her automobile insurance policy with Plaintiff Allstate Property & Casualty Insurance Company.

The Clerk of Court is directed to **CLOSE** this case.

**BY THE COURT:**

/s/ Cynthia M. Rufe
_____
**CYNTHIA M. RUFE, J.**